IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EUGENE NICHOLAS, individually<br>508 East Valley Rd.<br>Loganton, PA 17747 | |
| HEIDI L. WORDEN, individually<br>192 S. Mill St.<br>Loganton, PA 17747 | CIVIL ACTION NO.: |
| EUGENE NICHOLAS and HEIDI L. WORDEN jointly d/b/a Nicholas Farms<br>508 East Valley Rd.<br>Loganton, PA 17747 | JURY TRIAL DEMANDED |
| LYNN R. HOTTLE, individually<br>122 Enterprise Rd.<br>Ulster, PA 18850 | |
| LYNN R. HOTTLE d/b/a Hottle Livestock<br>PO Box 73<br>Rome, PA 18837 | |
|     Plaintiffs, | |
| v. | |
| JEFFREY SNIDER<br>4536 Winton Road<br>Montour Falls, NY 14865 | |
| VALERIE SNIDER<br>4536 Winton Road<br>Montour Falls, NY 14865 | |
| CAV FARMS, INC.<br>4536 Winton Road<br>Montour Falls, NY 14865 | |
| MEDIO CIELO, LLC<br>4536 Winton Road<br>Montour Falls, NY 14865 | |
|     Defendants. | |

**COMPLAINT**

Plaintiffs Eugene Nicholas, individually, Heidi L. Worden, individually, Eugene Nicholas and Heidi L. Worden jointly d/b/a Nicholas Farms, and Lynn R. Hottle, individually and d/b/a Hottle Livestock, (collectively, "Plaintiffs"), by and through counsel, hereby file the following complaint against Defendants, Jeffrey Snider, Valerie Snider, CAV Farms, Inc., and Medio Cielo, LLC (collectively, "Defendants"), and allege in support thereof as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331, the Packers and Stockyards Act, 1921 (7 U.S.C. § 181, et seq. (the "Act")), and 28 U.S.C. § 1367.

2. The claims asserted herein arise under the Act, including a private right of action created by 7 U.S.C. § 209 and common law.

3. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00.

4. Venue of this action in this judicial district is appropriate pursuant to 28 U.S.C. § 1391.

## Parties

5. Plaintiff Eugene Nicholas is an adult individual with an address of 508 East Valley Rd., Loganton, Pennsylvania 17747.

6.      Plaintiff Heidi L. Worden is an adult individual with an address of 192 S. Mill Street, Loganton, Pennsylvania 17747.

7.      Plaintiff Eugene Nicholas and Heidi L. Worden jointly d/b/a Nicholas Farms ("Nicholas Farms") has an address of 508 East Valley Rd., Loganton, Pennsylvania 17747.  Nicholas Farms is a livestock "dealer" as that term is defined in 7 U.S.C. § 201 of the Act.

8.      Lynn R. Hottle, individually and d/b/a Hottle Livestock, (collectively, "Hottle Livestock") is an adult individual with an address of 122 Enterprise Rd., Ulster, PA 18850 and a business address of PO Box 73, Rome, PA 18837.  Hottle Livestock is a livestock "dealer" as that term is defined in 7 U.S.C. § 201 of the Act.

9.      Defendant Jeffrey Snider is an adult individual residing at 4536 Winton Road, Montour Falls, New York 14865.

10.     Defendant Valerie Snider (together with Jeffrey Snider, the "Sniders") is an adult individual residing at 4536 Winton Road, Montour Falls, New York 14865.

11.     Defendant Medio Cielo, LLC ("Medio") is a limited liability company organized under the laws of New York with its principal place of business at 4536 Winton Road, Montour Falls, New York 14865.

12. Defendant CAV Farms, Inc. ("CAV") is a New York corporation with its principal place of business at 4536 Winton Road, Montour Falls, New York 14865.

13. Defendants are each a "dealer" or "market agency" as those terms are defined in the Act.

14. Defendants have a close affiliation with each other, including by utilizing the same mailing address. Additionally, on information and belief, CAV holds a 53% membership interest in Medio, and the Sniders are the trustees of the Snider Living Trust, the sole shareholder of CAV.

## STATEMENT OF FACTS

15. Plaintiffs are in the business of dealing livestock.

16. On information and belief, including sworn testimony provided by an owner of Medio, Defendants are in the business of buying and selling livestock in "commerce" as defined in the Act.

17. On information and belief, CAV had an agreement to provide and sell cattle to a third-party buyer, and Medio had an agreement with CAV to procure such cattle for CAV.

18. Prior to making a purchase of cattle, the Sniders consulted closely with the other owner of Medio to discuss the desired features of the cattle proposed to be purchased, including weight, breed, location, ownership, and gender mix.

19. If the Sniders agreed to a proposed purchase after such consultation, Medio would purchase the proposed cattle.

20. On information and belief, after the purchase, Medio would then make arrangements for transporting the cattle to New York for tagging.

### A. Cattle Sales From Nicholas Farms to Defendants

21. On several occasions in 2017, representatives of Defendants visited Nicholas Farms in Pennsylvania for the purpose of negotiating the purchase of livestock from Nicholas Farms.

22. Ultimately, in June and July 2017, the parties orally agreed to three separate sales of cattle (totaling 103, 80, and 48 head of cattle, respectively) to Defendants with a purchase price of $3 per pound of dressed weight of the cattle sold.

23. For each of the three sales, Defendants promised to make payment to Nicholas Farms in accord with the agreed upon price.

24. For each of the three sales, Nicholas Farms shipped the agreed upon number of cattle from Pennsylvania to Defendants in New York.

25. For each of the three sales, Defendants accepted the delivery of the agreed upon number of cattle in New York.

26. Although the last of these three sales occurred over a year ago, Defendants have never paid Nicholas Farms the amount (in excess of $600,000) that Defendants owe Nicholas Farms for these sales.

### B.     Livestock Sales From Hottle Livestock to Defendants

27. On several occasions in 2016 and 2017, a representative of Defendants visited Hottle Livestock in Pennsylvania for the purpose of negotiating the purchase of livestock from Hottle Livestock.

28. Ultimately, in December 2016 through July 2017, the parties orally agreed to seven (7) separate sales of cattle to Defendants (consisting of 50, 42, 30, 63, 23, 86, and 56 head, respectively) with a purchase price of $1.55 per pound of live weight of cattle sold.

29. In April 2017, the parties orally agreed to a sale of 34 head of cattle to Defendants for a purchase price of $10,000.

30. In June 2017, the parties orally agreed to a sale of 24 head of cattle to Defendants with a purchase price of $1,400 for each head of cattle.

31. For each of these sales, Defendants promised to make payment to Hottle Livestock in accord with the agreed upon price.

32. For each of these sales, Hottle Livestock shipped the agreed upon number of livestock from Pennsylvania to Defendants in New York.

33. For each of these sales, Defendants accepted the delivery of the agreed upon number of livestock in New York.

34. Although the last of these sales occurred over a year ago, Defendants have never paid Hottle Livestock the amount (in excess of $350,000) that Defendants owe Hottle Livestock for these sales.

**COUNT I – VIOLATION OF 7 U.S.C. § 213(a)**
**NICHOLAS FARMS V. DEFENDANTS**

35. Plaintiffs hereby incorporate paragraphs 1 through 34 as though fully set forth at length herein.

36. 7 U.S.C. § 213(a) provides, "[i]t shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with the receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling of livestock."

37. 7 U.S.C. § 228b provides in pertinent part:

> Each packer, market agency, or dealer purchasing livestock shall, before the close of the next business day following the purchase of livestock and transfer of possession thereof, deliver to the seller or his duly authorized representative the full amount of the purchase price. . . .
>
> Any delay or attempt to delay by a market agency, dealer, or packer purchasing livestock, the collection of funds as

7

herein provided, or otherwise for the purpose of or resulting in extending the normal period of payment for such livestock shall be considered an "unfair practice" in violation of this chapter.

38. At all relevant times, Defendants were each a dealer or market agency in commerce as defined by the Act.

39. Defendants purchased livestock from Nicholas Farms on three separate occasions in June and July 2017, and on each of these occasions, at the direction of Defendants, Nicholas Farms transferred possession of said livestock to Defendants.

40. Defendants failed to provide payment, in violation of 7 U.S.C. §§ 213(a), 228b, for the livestock Nicholas Farms transferred to them.

41. Nicholas Farms did not expressly agree in writing to waive the requirements of 7 U.S.C. § 228b.

42. Defendants are liable to Nicholas Farms for the full amount of damages sustained as a result of their violation of the Act.

WHEREFORE, Plaintiffs, by and through counsel, pray for relief and judgment as follows:

    a. An award of damages or, alternatively, restitution, jointly and severally against the Defendants and in favor of Plaintiffs for all damages sustained by Plaintiffs as a result of Defendants' wrongful conduct;

    b. Award Plaintiffs reasonable costs and expenses incurred in this action by Plaintiffs; and

c. For all such other relief that this Court may deem appropriate.

## COUNT II – BREACH OF CONTRACT
## NICHOLAS FARMS V. DEFENDANTS

43. Plaintiffs hereby incorporate paragraphs 1 through 42 as though fully set forth at length herein.

44. As described herein, after discussions in Pennsylvania among the parties, Nicholas Farms orally offered to sell cattle to Defendants on three separate occasions in June and July 2017.

45. Defendants accepted each such offer.

46. Price being an essential term of contract, Defendants agreed to pay Nicholas Farms $3 for each pound of dressed weight of cattle delivered to Defendants.

47. Pursuant to the parties' oral contracts, Nicholas Farms fully and completely complied with its obligations to provide livestock to Defendants by shipping the agreed upon amount of cattle for each oral contract from Pennsylvania to Defendants in New York.

48. Defendants accepted from Nicholas Farms each of the deliveries of cattle.

49. Defendants breached each of the parties' oral contracts by accepting the cattle shipped to them by Nicholas Farms but failing to make full and complete payment to Nicholas Farms for the livestock it delivered to Defendants.

50. As a result of Defendants' failure to make full and complete payment, Nicholas Farms has been damaged, including the loss of use of the funds due and owing from Defendants.

WHEREFORE, Plaintiffs, by and through counsel, pray for relief and judgment as follows:

    a. An award of damages or, alternatively, restitution, jointly and severally against the Defendants and in favor of Plaintiffs for all damages sustained by Plaintiffs as a result of Defendants' wrongful conduct;

    b. Award Plaintiffs reasonable costs and expenses incurred in this action by Plaintiffs; and

    c. For all such other relief that this Court may deem appropriate.

### COUNT III – VIOLATION OF 7 U.S.C. § 213(a)
### HOTTLE LIVESTOCK V. DEFENDANTS

51. Plaintiffs hereby incorporate paragraphs 1 through 50 as though fully set forth at length herein.

52. 7 U.S.C. § 213(a) provides, "[i]t shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with the receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling of livestock."

53. 7 U.S.C. § 228b provides in pertinent part:

> Each packer, market agency, or dealer purchasing livestock shall, before the close of the next business day following the purchase of livestock and transfer of possession thereof, deliver to the seller or his duly authorized representative the full amount of the purchase price. . . .
>
> Any delay or attempt to delay by a market agency, dealer, or packer purchasing livestock, the collection of funds as herein provided, or otherwise for the purpose of or resulting in extending the normal period of payment for such livestock shall be considered an "unfair practice" in violation of this chapter.

54. At all relevant times, Defendants were each a dealer or market agency in commerce as defined by the Act.

55. Defendants purchased livestock from Hottle Livestock on nine (9) separate occasions in December 2016 through July 2017, and on each of these occasions, at the direction of Defendants, Hottle Livestock transferred possession of said livestock to Defendants.

56. Defendants failed to provide payment, in violation of 7 U.S.C. §§ 213(a), 228b, for the livestock Hottle Livestock transferred to them.

57. Hottle Livestock did not expressly agree in writing to waive the requirements of 7 U.S.C. § 228b.

58. Defendants are liable to Hottle Livestock for the full amount of damages sustained as a result of their violation of the Act.

WHEREFORE, Plaintiffs, by and through counsel, pray for relief and judgment as follows:

    a.    An award of damages or, alternatively, restitution, jointly and severally against the Defendants and in favor of Plaintiffs for all damages sustained by Plaintiffs as a result of Defendants' wrongful conduct;

    b.    Award Plaintiffs reasonable costs and expenses incurred in this action by Plaintiffs; and

    c.    For all such other relief that this Court may deem appropriate.

## COUNT IV – BREACH OF CONTRACT
## HOTTLE LIVESTOCK V. DEFENDANTS

59.    Plaintiffs hereby incorporate paragraphs 1 through 58 as though fully set forth at length herein.

60.    As described herein, after discussions in Pennsylvania among the parties, Hottle Livestock orally offered to sell cattle to Defendants on nine (9) separate occasions in December 2016 through July 2017.

61.    Defendants accepted each such offer.

62.    Price being an essential term of contract, as set forth in the preceding paragraphs, (a) for seven (7) cattle sales, Defendants agreed to pay Hottle Livestock $1.55 per pound of live weight of cattle delivered to Defendants, (b) for a cattle sale in April 2017, Defendants agreed to pay Hottle Livestock $10,000 for 34 head of

cattle, and (c) for a cattle sale in June 2017, Defendants agreed to pay Hottle Livestock $1,400 each for 24 head of cattle.

63. Pursuant to the parties' oral contracts, Hottle Livestock fully and completely complied with its obligations to provide livestock to Defendants by shipping the agreed upon amount of livestock for each oral contract from Pennsylvania to Defendants in New York.

64. Defendants accepted from Hottle Livestock each of the deliveries of livestock.

65. Defendants breached each of the parties' oral contracts by accepting the livestock shipped to them by Hottle Livestock but failing to make full and complete payment to Hottle Livestock for the livestock it delivered to Defendants.

66. As a result of Defendants' failure to make full and complete payment, Hottle Livestock has been damaged, including the loss of use of the funds due and owing from Defendants.

WHEREFORE, Plaintiffs, by and through counsel, pray for relief and judgment as follows:

    a. An award of damages or, alternatively, restitution, jointly and severally against the Defendants and in favor of Plaintiffs for all damages sustained by Plaintiffs as a result of Defendants' wrongful conduct;

    b.    Award Plaintiffs reasonable costs and expenses incurred in this action by Plaintiffs; and

    c.    For all such other relief that this Court may deem appropriate.

## COUNT V – UNJUST ENRICHMENT
## PLAINTIFFS V. DEFENDANTS

67. Plaintiffs hereby incorporate paragraphs 1 through 66 as though fully set forth at length herein.

68. Plaintiffs conferred benefits upon Defendants by delivering livestock worth hundreds of thousands of dollars to Defendants as described herein.

69. Defendants appreciated the benefits of such livestock, and Defendants accepted such benefits when they accepted delivery of such livestock for their use and benefit.

70. It would be inequitable and unjust for Defendants to retain such benefits without payment of the value of such livestock.

WHEREFORE, Plaintiffs, by and through counsel, pray for relief and judgment as follows:

    a.    An award of damages or, alternatively, restitution, jointly and severally against the Defendants and in favor of Plaintiffs for all damages sustained by Plaintiffs as a result of Defendants' wrongful conduct;

    b.    Award Plaintiffs reasonable costs and expenses incurred in this action by Plaintiffs; and

    c.    For all such other relief that this Court may deem appropriate.

## COUNT VI – PROMISSORY ESTOPPEL
## PLAINTIFFS V. DEFENDANTS

71.    Plaintiffs hereby incorporate paragraphs 1 through 70 as though fully set forth at length herein.

72.    Defendants are in the business of buying and selling livestock.

73.    Defendants promised Plaintiffs that they would pay for livestock if Plaintiffs delivered livestock to them.

74.    In reasonable reliance upon Defendants' promises, Plaintiffs delivered said livestock to Defendants.

75.    Plaintiffs incurred significant cost and damages in direct consequence of their reliance upon Defendants' promises that they would make payment for livestock delivered by Plaintiffs.

76.    Injustice can only be avoided if Defendants compensate Plaintiffs for the livestock they delivered to Defendants upon promise of payment by Defendants.

WHEREFORE, Plaintiffs, by and through counsel, pray for relief and judgment as follows:

    a.    An award of damages or, alternatively, restitution, jointly and severally against the Defendants and in favor of Plaintiffs for all damages sustained by Plaintiffs as a result of Defendants' wrongful conduct;

b.    Award Plaintiffs reasonable costs and expenses incurred in this action by Plaintiffs; and

c.    For all such other relief that this Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial as to all claims so triable.

Respectfully,

**FOX ROTHSCHILD LLP**

By:   /s/ John J. Haggerty
John J. Haggerty, Esq. (I.D. No. 66932)
James C. Clark, Esq. (I.D. No. 310900)
Zachary C. Martin, Esq. (I.D. No. 307223)
2700 Kelly Road, Suite 300
Warrington, PA 18976
*Attorneys for Plaintiffs*

Date:  August 16, 2018